COMMONWEALTH *vs.* JOHN L. BURKE.

Middlesex.    February 7, 1977. — November 2, 1977.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Practice, Criminal,* Speedy trial, Mistrial, Argument by prosecutor.

Where the defendant himself initiated the process of his return to the Commonwealth for disposition of an indictment pending against him, rather than being returned as a result of the Commonwealth's efforts, the Commonwealth was required to try him within 180 days in accordance with art. III of the Interstate Agreement on Detainers rather than the 120 days required by art. IV. [570-572]

At a criminal trial, an improper question by the prosecutor was not prejudicial where the witness was not allowed to give his response. [573-574]

At a criminal trial, references by a prosecutor in his closing argument to evidence which had been excluded and remarks concerning the character of the defendant, who had not taken the stand, were so prejudicial to the defendant as to require a new trial. [574-577]

INDICTMENT found and returned in the Superior Court on September 11, 1974.

The case was tried before *Moynihan, J.*

After review was sought in the Appeals Court, the Su-

preme Judicial Court, on its own initiative, ordered direct appellate review.

*Eileen Cenci* for the defendant.

*Peter W. Agnes,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J.    John L. Burke (defendant) was convicted, after a jury trial, on an indictment charging armed robbery. He appeals that conviction pursuant to G. L. c. 278, §§ 33A-33H, and claims as reversible error (1) the denial of his motions for mistrial, particularly the motion which was made during the Commonwealth's summation, and (2) the denial of his motion to dismiss for lack of speedy trial as guaranteed by the Agreement on Detainers (the agreement). St. 1965, c. 892, § 1. Though we find the defendant's speedy trial claim to be meritless, we conclude that the prosecutor's closing argument, viewed in its entirety, exceeded permissible bounds. Accordingly, we reverse the conviction and remand for a new trial.

1. *Speedy Trial.*

While the defendant was incarcerated in the Federal Correctional Institution, Tallahassee, Florida, a detainer, based on the indictment charging him with the instant armed robbery, was lodged against him. Invoking the provisions of the Interstate Agreement on Detainers, the defendant, on March 28, 1975, made a written request for final disposition of the pending indictment. His request, a certificate of inmate status, and an offer of temporary custody were forwarded by the warden of the Federal institution to the Commissioner of Correction, the district attorney for the Northern District, and the clerk of the courts for Middlesex County. On May 5, 1975, the defendant was transferred to Massachusetts, was arraigned, and entered a plea of not guilty.

Although the defendant's case was assigned to a trial session on June 24, 1975, it was not reached during the June sitting. On July 3, 1975, the Commonwealth moved to extend the 120-day period allotted by art. IV (*c*) of the agreement for the commencement of trial. It was believed

by the parties that such period would expire on September 5, 1975. The motion was granted and the defendant was brought to trial on September 16, 1975.

On the day of trial the defendant filed a motion to dismiss on the ground that he was denied a speedy trial because the Commonwealth had failed to initiate its prosecution within the time limit established by art. IV (*c*) of the agreement. The defendant conceded that the agreement provides for extensions of time "for good cause shown," but he argued that the reasons advanced by the Commonwealth as justification for the July 3 continuance failed as matter of law to meet that statutory standard. Therefore, since he was not brought to trial within 120 days, he was entitled to dismissal of the indictment. See art. V (*c*) of the agreement ("[I]n the event that an action on the indictment ... is not brought to trial within the period provided ..., the appropriate court of the jurisdiction where the indictment ... has been pending shall enter an order dismissing the same with prejudice ...."). His motion was denied.[1]

The parties and apparently the Superior Court judge have regarded the provisions of art. IV of the agreement as controlling the disposition of the speedy trial claim. That section of the agreement operates when the demanding State itself seeks to obtain custody of the accused from the confining State. In such circumstances, the defendant must be tried within 120 days from the time he is delivered to the demanding State. However, where, as here,[2] the defendant himself initiates the process of his return to the demanding State for resolution of the outstanding charge, art. III of the agreement provides that the defendant must

---

[1] We note that the defendant's speedy trial claim is restricted to the alleged noncompliance with the terms of the agreement, and he does not argue that he was denied a speedy trial in the constitutional sense. Cf. *Barker* v. *Wingo,* 407 U.S. 514 (1972); *Commonwealth* v. *Beckett, ante,* 329 (1977).

[2] The record clearly indicates, and the defendant himself concedes, that his presence in the Commonwealth was a consequence of *his efforts* to seek a speedy resolution of the pending armed robbery charge.

be tried within 180 days from the time "he shall have caused to be delivered ... his request for a final disposition to be made of the indictment." Since the defendant was brought to trial within the allotted period, he was not entitled to dismissal of the indictment.

2. *The Evidence.*

Prior to addressing the defendant's claim that the trial judge erred in declining to order a mistrial, we summarize the facts. From the evidence introduced at trial, the jury could have found the following.

Around noon on July 13, 1973, Steven Mattera, Michael Prochilo, and the defendant entered the Metropolitan Life Insurance Company in Everett. Prochilo jumped up on a counter and yelled, "This is a robbery. Everybody freeze." Mattera then stood in the lobby with a shotgun while Prochilo and the defendant went into an inner office area to obtain the money. On two occasions during the robbery, the defendant walked over to Patricia Mattuchio, an employee, aimed a gun at her, and threatened to kill her if she did not follow his instructions. She observed that he was approximately 5'7" in height, medium build, with long hair and a moustache. He was wearing a rust-colored polo shirt, dungarees, a hat and sunglasses.

During the course of the robbery the driver, Dennis Daye, waited outside in a blue Chevrolet automobile. He was observed at close range by Patricia DiSabatino, who worked in an office adjoining the insurance company. She also observed the robbers come out of the building, walk past her, and proceed to the vehicle. The one closest to her window looked at her, and she noticed that he was attired in a rust-colored shirt.

As Mattera, Prochilo, and the defendant hurried into the car, they were spotted by two Everett police officers on cruiser patrol. As the cruiser stopped, a shotgun blast rang out and the Chevrolet sped away. The officers attempted to follow the car but did not catch up with it.

Another Everett police officer heard a police radio broadcast, spotted the suspects' car and took up the chase. He

followed the Chevrolet down a dead-end street, where it came to a stop and three men got out. The officer pursued for a short distance the man wearing a rust-colored jersey but was unable to apprehend him. Thereafter the officer returned to the Chevrolet, where he found Dennis Daye, the operator of the vehicle, lying on the floor in the rear of the car.

Later that day, Mattera and Prochilo were apprehended and taken to the police station. At a lineup, Ms. Mattuchio identified these men as the robbers. Ms. DiSabatino identified Daye as the driver of the car. Approximately two weeks later, these two women and the officer who gave chase were separately shown approximately eighteen photographs of men similar in appearance. Each picked out a photograph of the defendant as the man they had seen in the rust-colored shirt. In addition, another insurance company employee made a photographic identification of the defendant. All of these witnesses identified the defendant in the court room.

The defense offered an alibi and raised the possibility of mistaken identification. Daye and Prochilo, who pleaded guilty to the armed robbery and were serving sentences for that offense, testified on the defendant's behalf. Prochilo admitted that he and Mattera had robbed the insurance company but claimed that Daye, and not the defendant, had been the third participant, and that Thomas DiLorenzo had been the driver of the car. Daye gave similar testimony. In addition, Dale Busheme, a self-employed masonry worker, testified that the defendant was working for him on July 13, 1973.

3. *Improper Questioning.*

Officer Miller of the Everett police was called as a Commonwealth's witness. It appears that he had no personal knowledge of any of the circumstances relating to the crime. He was asked whether he knew Daye, Mattera, Prochilo and the defendant, and whether he had ever seen the defendant in the company of the others. The first question was answered in the affirmative and the second

question was excluded. The defendant contends that the judge should have declared a mistrial, as the Commonwealth attempted to show guilt by association.

A person cannot be convicted by proof of association. *Commonwealth* v. *Perry*, 357 Mass. 149 (1970). However, it is clear that no prejudice resulted from this arguably improper question, since the witness was not allowed to give his response. Cf. *Commonwealth* v. *Szemetum*, 3 Mass. App. Ct. 651 (1975). The judge did not abuse his discretion in denying the motion for mistrial. See *Commonwealth* v. *Flynn*, 362 Mass. 455, 471 (1972).

4. *Closing Argument.*

Dennis Daye testified that the fourth participant was DiLorenzo rather than the defendant. In an effort to discredit that testimony, the assistant district attorney, without laying a proper foundation, attempted to introduce, through Daye, DiLorenzo's death certificate. Though defense counsel noted his objection, the prosecutor, before the judge had an opportunoity to order the document excluded, read the contents of the certificate to the jury. The judge ordered the jury to "disregard the question put to the witness by the assistant district attorney." Notwithstanding the fact that the objection was sustained, the assistant district attorney during closing argument stated: "[Y]ou probably know where Mr. DiLorenzo is . . . . [D]ead men tell no tales. You know that." Defense counsel objected and the judge instructed the jury to disregard the comment.

The prosecutor was admonished to refrain from commenting on the defendant, who had not taken the stand. Nevertheless, the prosecutor made remarks concerning the character of the defendant by stating, "You have . . . to decide whether or not someone like Mr. Burke is going to go out in the streets again." The prosecutor was again warned to change his line of argument. A motion for mistrial was again denied.

There is no doubt that each of the above-recounted segments of the Commonwealth's closing argument was improper. "The scope of proper argument is simply stated.

Counsel may argue as to the evidence and the fair inferences from the evidence." *Commonwealth* v. *Earltop,* 372 Mass. 199, 205 (1977) (Hennessey, C.J., concurring), citing *Leone* v. *Doran,* 363 Mass. 1, 18 (1973). The death certificate of DiLorenzo was excluded by the judge; there was no evidence of that person's death properly before the jury. No attorney shall refer in closing argument to evidence which has been excluded, nor may he or she invite an inference from the exercise of a party's right to have evidence excluded. Cf. *Commonwealth* v. *Coughlin,* 182 Mass. 558, 563-564 (1903). Failure to abide by this standard constitutes ground for reversal. *Id.* The correctness of the judge's ruling is irrelevant.

It was also highly improper, especially in light of his having been reprimanded by the judge, for the prosecutor to have stated in effect that someone like the defendant should not be allowed on the streets. These remarks attacked the character of the defendant, an issue which had not been raised at trial. Cf. *Commonwealth* v. *MacDonald (No. 1),* 368 Mass. 395, 400-401 (1975); *Commonwealth* v. *Graziano,* 368 Mass. 325, 331-332 (1975); *Commonwealth* v. *Gilday,* 367 Mass. 474, 496-497 (1975); *Commonwealth* v. *Barras,* 3 Mass. App. Ct. 43, 49-50 (1975).

The Commonwealth does not deny the impropriety of these remarks. Instead, it argues that (1) the errors were not adequately preserved for appellate review; (2) the prosecution was merely attempting to "fight fire with fire"; (3) the prejudicial effect of these errors was diminished substantially by the judge's curative instructions; and (4) the evidence of guilt was overwhelming; therefore, the errors were harmless. We reject these contentions. Defense counsel in each instance interposed an objection and requested an instruction. Moreover, after the final impermissible prosecutorial statement, counsel moved for a mistrial and requested permission to approach the bench. The motion and the request were both denied and counsel excepted. These errors were thus brought to the attention of the presiding judge. Therefore, we conclude that the defendant's appellate rights were adequately preserved.

Cf. *Commonwealth* v. *Gouveia,* 371 Mass. 566, 571-572 (1976); *Commonwealth* v. *Killelea,* 370 Mass. 638 (1976).

The Commonwealth argues that opposing counsel, by reminding the jury that "this man's liberty might depend" on their verdict, opened the door for the prosecutor to argue that someone like the defendant should not be allowed to walk the streets.[3] The right to "fight fire with fire" is limited. See *Commonwealth* v. *Smith,* 342 Mass. 180 (1961). It must be directed solely toward correcting an erroneous impression created by opposing counsel. In close cases, a prosecutor would be well advised to inform the trial judge of his intention to resort to retaliatory reply and to disclose the intended scope of his remarks. *Commonwealth* v. *Earltop, supra* at 206 (Hennessey, C.J., concurring). See *Commonwealth* v. *Haas, ante,* 545, 561-562 (1977). The Commonwealth's remarks were not justified in the instant case. Nor did the fact that DiLorenzo was implicated in the crime warrant closing remarks on the death certificate — a matter which was excluded from evidence. See *Commonwealth* v. *Haas, supra* at 561-562.

We do not believe that the instructions of the judge could adequately compensate for the Commonwealth's prejudicial closing. In so concluding, we reiterate that "[p]rejudicial excesses in argument offered on behalf of the Commonwealth constitute *prosecutorial error,* not judicial error." *Commonwealth* v. *Earltop, supra* at 206 (Hennessey, C.J., concurring).

After the first prejudicial remark, the judge told the jury to disregard the comment. The latter (and major) impropriety was met by a judicial admonition to change the line of closing argument. In his charge to the jury, the judge instructed them only that they were to decide the case solely on the basis of the evidence and that closing

---

[3] Neither the judge nor counsel may inform the jury of the consequences of their verdict. See *Commonwealth* v. *Ferreira, ante,* 116 123-130 (1977). Where defense counsel engages in impermissible closing argument, he damages his client's cause by opening the door to retaliatory reply and reprimand by the judge, as well as other appropriate sanctions.

remarks were not evidence. We do not believe that instructions could counteract the prejudicial effect of the prosecutor's summation.

Finally, the Commonwealth contends that these errors were harmless. Concededly, there was much evidence which tended to show the defendant's guilt. Moreover, neither of the improper remarks, standing alone, was sufficiently egregious to constitute ground for reversal. However, "the prejudicial impact of the prosecutor's charge should be assessed by looking at the combined effect of all his errors." *Commonwealth* v. *Borodine*, 371 Mass. 1, 11 (1976), cert. denied, 429 U.S. 1049 (1977). See *Commonwealth* v. *MacDonald (No. 1)*, 368 Mass. 395, 401-402 (1975). Viewing the argument in this manner, we conclude that reversal is required. Accordingly, the judgment of the Superior Court is reversed, the verdict set aside and the case remanded for a new trial. Cf. *Commonwealth* v. *Richards*, 363 Mass. 299, 310 (1973).

*So ordered.*