COMMONWEALTH vs. ALAN DIAS.

Plymouth.   September 16, 1982. — October 25, 1982.

Present: GREANEY, PERRETTA, & KASS, JJ.

*Receiving Stolen Property. Practice, Criminal,* Sequestration of witnesses, Argument by prosecutor. *Evidence,* Authentication of document.

At the trial of an indictment charging the defendant with receiving a stolen motor vehicle, the evidence with respect to the existence of the essential elements of the crime charged was sufficient to warrant denial of the defendant's motion for a required finding of not guilty. [562-563]

At the trial of an indictment charging the defendant with receiving a stolen motor vehicle, the judge, who allowed a defense motion to sequester witnesses, did not err in admitting testimony of a prosecution witness who had violated his sequestration order by reappearing in the courtroom after he had testified, and who, upon resuming the witness stand, testified as a rebuttal witness for the limited purpose of introducing documents he had obtained from the Registry of Motor Vehicles. [563]

There was no merit to a criminal defendant's contention that, among three documents from the files of the Registry of Motor Vehicles admitted at trial, only an application for title and registration of an allegedly stolen automobile was authenticated by an attached single form of attestation of the Registrar of Motor Vehicles where the impression of the seal of the Commonwealth appeared on all three documents and it was obvious, from a physical inspection, that they constituted a package. [563-564]

At a criminal trial, a remark by the prosecutor in closing argument, as to the pendency of another charge not being tried before the jury, in response to a knowingly false statement in the closing argument of the defense that such a charge was not pending, which was followed by the judge's forceful limiting instructions, was not so prejudicial to the defendant as to require a new trial. [564-566]

INDICTMENT found and returned in the Superior Court Department on November 27, 1979.

The case was tried before *Taveira, J.*

*Martin J. Drilling* for the defendant.

*Robert S. Sinsheimer,* Assistant District Attorney, for the Commonwealth.

KASS, J. The case against the defendant, Alan Dias, began to build when his brother, Christian, ran a red light in Marshfield and was stopped by a police officer. That incident triggered an investigation which led to the conviction of Alan Dias on indictments for receiving a stolen motor vehicle and altering a vehicle identification number. We affirm the judgment of conviction on the charge of receiving a stolen motor vehicle. The conviction on the other charge was placed on file.

At the close of the Commonwealth's case, the jury could have found the following: The car in question was not inconspicuous — it was a baby-blue Lincoln Continental Mark IV with a dark landau roof. Officer Knight, who was alone in his cruiser when he made the traffic violation stop, was joined shortly thereafter by Sergeant John Ewart of the Marshfield police. Ewart was specially trained in detecting car theft and the vehicle identification number (VIN) on the dashboard of the Lincoln attracted his attention. It was fastened with rivets which were round. He knew that the manufacturer used hexagonal rivets to affix VIN's. Ewart also noticed that the first figure of the VIN ("5"), which represents the second digit of the model year, was for a 1975 model, but the car looked like a 1976 model to him. Examination of the car's door jamb on the driver's side disclosed a decal that the car conformed with the regulations of the United States Environmental Protection Agency for the 1976 model year, and that a portion of the decal which repeats the VIN had been removed. Their suspicion aroused, the police took the car to the station and exposed the VIN on the firewall and the VIN stamped on the chassis. The VIN on the firewall matched that on the dashboard; however the number stamped on the chassis itself did not. The latter was traced to a car stolen from an MBTA parking lot at Revere Beach in May of 1978, and the car was subsequently so identified by its owner's father.

Further investigation connected the VIN on the dashboard with a salvage car, a 1975 Lincoln, purchased from the Kemper Insurance Company salvage pool by Alan's Automotive Service, the name of the defendant's business. At this juncture the police obtained a warrant to search the defendant's business premises. During the course of the search, a State trooper examined the defendant's records of purchases of second-hand motor vehicles, required to be kept under G. L. c. 140, § 62, and found no record concerning acquisition of the 1975 Lincoln. The trooper commented on this to the defendant, who responded that "it's not in there." A police officer from Hanson saw the baby-blue Lincoln, i.e., the stolen car, in the defendant's shop on March 27, 1979.

1. *Denial of Motion for Required Findings of Not Guilty.*

When the Commonwealth rested its case, there was sufficient evidence, viewed in a light most favorable to the prosecution, from which a rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *Commonwealth* v. *Kelley,* 370 Mass. 147, 150 (1976). *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979). Certainly the evidence allowed the jury to infer that the defendant had bought the junk Lincoln and switched its VIN's to the stolen car, which had been seen earlier in his shop, and that he did so to conceal the stolen car. That the sighting of the purloined Lincoln in the Alan's Automotive Service yard occurred nine months after the car was stolen, and seven months before the police observed the false VIN's, does not render the necessary inferences unreasonable. Facts so inferred would be sufficient to uphold the convictions under G. L. c. 266, § 28, as amended through St. 1972, c. 78,[1] and G. L. c. 266, § 139, as

---

[1] Concealment of any motor vehicle knowing the same to have been stolen violated the statute as it appeared at the time the offense occurred. By St. 1980, c. 463, § 4, the statute was rewritten so as to provide, among other things, that alteration of a VIN is prima facie evidence that the defendant knew or had reason to know that the motor vehicle had been stolen.

appearing in St. 1961, c. 73, § 4.[2]  It is not necessary to prove that the defendant retained possession of the stolen goods, *Commonwealth* v. *Kuperstein*, 207 Mass. 25, 27 (1910).  "It is enough that the defendants acted purposefully to withhold property from its rightful owner or to make it more difficult for the owner to discover it." *Commonwealth* v. *Ciesla*, 380 Mass, 346, 349 (1980).

2. *Violation of Sequestration Order.*

Although a defense motion to sequester witnesses had been allowed, a prosecution witness, Officer Knight, reappeared in the courtroom after he had testified.[3]  Knight was later called as a rebuttal witness for the limited purpose of introducing documents he had obtained from the Registry of Motor Vehicles.  Apart from the fact that it is within a judge's discretion to admit the testimony of a witness who has violated his sequestration order, *Commonwealth* v. *Jackson*, 384 Mass. 572, 582 (1981), the testimony of the police officer involved was "brief . . . and directed only at a technical link in the chain of custody" of the registry papers. *Ibid.*  There was no danger of perjury and no error.

3. *Authentication of Registry Documents.*

Over objection on the ground of inadequate authentication, three instruments from the files of the Registry of Motor Vehicles were admitted:  (1) an application for title and registration of the stolen Lincoln, but under the VIN of the junk car, by Anne C. Bastoni, who was a girlfriend of Christian Dias; (2) the bill of sale from Alan's Automotive Service to Bastoni; and (3) the certificate of title showing the transfer of the junk car from Kemper Insurance Company to Alan's Automotive Service.  The authentication of the Registrar of Motor Vehicles was attached by staples to

---

[2] General Laws c. 266, § 139, defines as a crime the intentional alteration, removal or destruction of a VIN.  Amendments effected by St. 1979, c. 792 and St. 1981, c. 264, §§ 1-3, are not material.

[3] Knight's return to the courtroom may have been an unintentional violation of the sequestration order as he had, in fact, concluded his testimony.  The wiser procedure for a witness who desires to come into the courtroom after finishing testimony is to ask the trial judge's permission.

four corners of the application and the other two documents were attached to those papers, together with the attestation of the State Secretary, by a single staple in the center. The defense argument is that only the application was authenticated by the attestation of the Registrar of Motor Vehicles. The argument verges on the frivolous. The impression of the seal of the Commonwealth appears on all the documents and it is obvious, from a physical inspection, that they constitute a package. It would be better if the Registrar's form of attestation, which referred to "the annexed instrument," were to refer "to the annexed instrument or instruments" in the alternative, but the judge quite rightly concluded that the requirements of G. L. c. 233, § 76, had been met.

4. *Closing Argument.*

During his closing argument, defense counsel represented to the jury:

> "First of all, Alan is not charged with failure to keep any record books. When you look at that statute at that time . . . the Class Two Dealership is required to keep his records on the licensed premises."

This was a punch below the belt. An indictment for failure to keep records of automobile transactions had been laid upon the defendant, but a new indictment, correcting a minor flaw in the original indictment, had been substituted on the morning the case was supposed to go forward. Defense counsel, who had previously moved to sever that third indictment from the other two, represented to the court that he was unaware that the new indictment was scheduled for trial and that he was unprepared to go forward on it that day. The motion to sever the third indictment was allowed. Defense counsel, of course, well knew that Alan Dias was charged with failure to keep record books.

When the prosecutor's turn to argue came, he said:

> "And now my brother . . . said that the defendant hasn't been charged with keeping books. That's not

true. He has been charged and that charge is still pending. The fact that he's not being tried today is of no consequence but I want to clear the record. He has been charged with failure to keep books and that is still pending against him . . . ."

Following the conclusion of the Commonwealth's closing argument, defense counsel moved for a mistrial because the prosecutor had mentioned the pendency of another charge not being tried before the jury.

Tolerance for the principle that a prosecutor in closing may "fight fire with fire" is limited. *Commonwealth* v. *McColl*, 375 Mass. 316, 325 (1978). As examples of the limitations of the "fight fire with fire" response see *Commonwealth* v. *Burke*, 373 Mass. 569, 576 (1977); *Commonwealth* v. *Hawley*, 380 Mass. 70, 85 (1980). For an example of permissible retaliatory reply to correct an erroneous impression created by closing argument for the defense, see *Commonwealth* v. *Prendergast*, 385 Mass. 625, 633-634 (1982). The prosecution's response here was even more forgiveable than in the circumstances presented by *Prendergast*. Defense counsel in the instant case did not merely create an erroneous impression in closing argument, he misstated a fact, the existence of the indictment on failure to keep records of second-hand car purchases, a fact which he knew to be false since he had gone to some pains to have the issue tried separately.

To be sure, it would have been better had the prosecutor objected and left it to the court to set matters straight; but we do not view the response as prosecutorial error. See also *Commonwealth* v. *Storey*, 378 Mass. 312, 324-325 (1979), cert. denied, 446 U.S. 955 (1980).

Moreover, the judge took great pains to remove the sting of the remark. He instructed the jury that they were not to consider that a charge was pending and that the matter should not have been brought up. He urged jurors who felt that they would be influenced by the pendency of another charge to disqualify themselves. One juror did so. At the

request of defense counsel, the judge then inquired whether the jurors had discussed the pending charge while they were in recess, and the answer was that they had not. We assume, as we must, that the jury understood and correctly applied the forceful limiting instructions. *Commonwealth v. Roberts,* 378 Mass. 116, 128 (1979).

*Judgment affirmed.*