COMMONWEALTH *vs.* STEPHEN E. SMITH.

Middlesex.  September 14, 1982. — January 11, 1983.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Practice, Criminal,* Comment by prosecutor, Conduct of prosecutor.

At a murder trial, the impact of a prosecutor's closing argument in which he improperly commented on the defendant's failure to testify, made inflammatory appeals to the jury's sympathy and remarked as to the consequences of their decision, when considered in conjunction with his tactical decisions during direct and cross-examination to emphasize foul language allegedly used by the defendant, to refer to certain "threats" as to which there was no evidence, and to exploit the gruesome nature of the crime, was so prejudicial to the defendant as to require a new trial. [904-912] ABRAMS, J., concurring.

INDICTMENTS found and returned in the Superior Court Department on January 16, 1979.

The cases were tried before *Chmielinski, J.*

*Willie J. Davis* for the defendant.

*Peter W. Agnes, Jr.,* Assistant District Attorney, for the Commonwealth.

LIACOS, J.  The defendant was convicted by a jury on February 6, 1980, of murder in the first degree, arson, and armed robbery.  He was sentenced to concurrent terms of life imprisonment at the Massachusetts Correctional Institution at Walpole on the murder and armed robbery indictments.  A sentence of not more than twenty years nor less than eighteen years at Walpole was imposed on the arson indictment, to be served from and after the life sentences. The defendant filed a notice of appeal.  G. L. c. 278, § 33E.  He claims that the conduct by the prosecutor during the trial and closing argument was so unfair and prejudicial as to warrant reversal and a new trial.  The appeal raises two ad-

ditional issues, namely, the correctness of the trial judge's charge on alibi and of the trial judge's limitation of cross-examination by the defendant of the Commonwealth's principal witness.

We conclude that the conduct of the prosecutor was of such an improper and prejudicial nature as to require reversal and a new trial.[1] There is no need to address the remaining issues, which are unlikely to recur at a new trial.

The evidence before the jury was as follows. On November 4, 1978, the defendant was present at a gathering of people at the home of the victim, William E. McArthur, in Waltham. In the defendant's presence, McArthur was asked by another person to sell some drugs. McArthur declined, explaining that he did not sell drugs to strangers. Subsequently, a woman at the party, Janice Kendall, left for a bar in Forest Hills with five people, including the defendant, in the defendant's car. She overheard the defendant say, "What's wrong with him?" "That dirty motherf-----?" "I will get him. His time will come sooner than he thinks. I will blow him away, the little motherf-----." There was a later comment by the defendant about the "bastard." Believing the defendant was referring to McArthur, Kendall responded by orally defending McArthur. Shortly thereafter all the occupants of the vehicle went to a bar and eventually home.

The following day, November 5, the defendant met a long-time friend, Frank Rice, at a bar. Telling Rice about the party and the quantity of drugs and money the defendant believed McArthur to have, the defendant indicated to Rice that he was going to rob McArthur. Later in the same evening of November 5, Bruce Gorham, Richard Fallavollita, and the defendant left in one car, and Rhonda Bennett and Steven Gorham followed in another car for the purpose of going to Waltham to rob McArthur of his drugs and money. The defendant had been drinking liquor and smoking "angel dust." The group stopped at a small grocery store to buy nylon stockings to use as masks.

---

[1] The assistant district attorney who argued the appeal before this court was not trial counsel.

The only testimony of what happened when the group arrived at McArthur's home in Waltham was the testimony of the Commonwealth's principal witness, Richard Fallavollita, an admitted accomplice. Fallavollitta had agreed to testify in exchange for the promise that the Commonwealth would nol-pros the murder charges and recommend a five to fifteen year suspended prison sentence on charges of armed robbery and arson. Fallavollita testified about the plea bargain given in exchange for his testimony.

According to Fallavollita's testimony, only Bruce Gorham, the defendant, and Fallavollita went into the house through an unlocked door. Bruce Gorham already had a knife, and the defendant pulled a knife from the wall. Gorham found McArthur sitting in the bedroom. He stabbed McArthur and demanded the drugs and money. When the victim denied having any substantial amount of drugs or money, the defendant and Gorham continued to abuse McArthur physically. Only $30 and three small packets of heroin were found. At one point, the defendant pulled his mask off, saying that McArthur had recognized his assailants, and suggested they kill him. Fallavollita stated that he protested and did not strike the victim.

The victim was stabbed by the defendant and by Gorham thirty-two times, and his house was set on fire. The charred corpse was found in the bedroom. The medical examiner testified that the victim had died of the stab wounds and not because of the fire. After the stabbings, the defendant and Gorham went to an apartment, where they cleaned themselves and divided between them the $30 and the heroin which they had taken. Witnesses testified that later, on two separate occasions, the defendant boasted that he had stabbed McArthur.

Edward White, a defense witness, presented an alibi for the defendant. White testified that on the evening of November 5 he found the defendant inebriated in a bar and took him home to sleep. According to White, the defendant did not leave until some time between midnight and ten o'clock the next morning. Another witness testified that the

defendant was known as a braggart and a heavy user of drugs.

The defendant contends that he was denied due process of law by the trial tactics of the prosecutor that were intended to prejudice and inflame the jury. The defendant also alleges that he was deprived of his constitutional right against self-incrimination by the remarks of the prosecutor in his closing argument that referred to the defendant's failure to take the stand to testify in his own defense. Finally, the defendant asserts that he was denied a fair and impartial trial because of the prosecutor's comments during closing argument that injected his personal belief in the defendant's guilt, that referred to facts not in evidence, that remarked on the consequences of the jury's decision, and that attempted to inflame and prejudice the jury. We consider these claims in the context of our many decisions dealing with alleged prosecutorial misconduct.

We have often warned that we will not tolerate prosecutorial misconduct during trial. "The concern of the court in this regard has been expressed repeatedly." *Commonwealth v. Johnson*, 372 Mass. 185, 198 (1977).

We stated clearly our views as to the significance we attach to improper prosecutorial conduct in *Commonwealth v. Haas*, 373 Mass. 545, 557 (1977): "We recognize that it is essential to our present day adversary system that trials be vigorously prosecuted and vigorously defended. We are aware that trials take place neither in academic halls nor under laboratory conditions and that '[g]reat latitude should be permitted to counsel in argument.' *Commonwealth v. Pettie*, 363 Mass. 836, 840 (1973). Nevertheless, final arguments cannot be freewheeling, extemporaneous verbal slugfests. Lawyers shall not and must not misstate principles of law nor may their summations infringe or denigrate constitutional rights. Advance preparation would eliminate from our consideration most aspects of closing arguments constantly being urged as improper. *We remind counsel that we shall not tolerate misconduct by lawyers during the persuasion phase of a criminal trial*" (emphasis added).

A review of cases decided both before and after the trial of this case should put all on notice that prosecutorial misconduct unnecessarily risks reversal of a conviction that otherwise might have been affirmed — all at great cost to the Commonwealth as well as to the defendants. See *Commonwealth* v. *Hoppin, ante* 25, 31-32 (1982); *Commonwealth* v. *Drayton,* 386 Mass. 39, 52 (1982); *Commonwealth* v. *Ferreira,* 381 Mass. 306, 317 (1980); *Commonwealth* v. *Hawley,* 380 Mass. 70, 87-90 (1980); *Commonwealth* v. *Roberts,* 378 Mass. 116, 117-118 (1979); *Commonwealth* v. *O'Brien,* 377 Mass. 772, 778 (1979); *Commonwealth* v. *Earltop,* 372 Mass. 199, 205-207 (1977) (Hennessey, C.J., concurring). "That prosecutors are frequently not familiar with the boundaries of argument, or choose to ignore them" is clear when it appears that the simple precaution of careful advance preparation suggested on several occasions has not been invoked. *Commonwealth* v. *Earltop, supra* at 205. See *Commonwealth* v. *Haas, supra.* We turn to consider the defendant's claims of prosecutorial error.

1. *Trial tactics.* The defendant has three complaints regarding the prosecutor's trial tactics which he contends exceeded the permissible limits of examination by seeking to prejudice and inflame the jury. First, during the direct and redirect examination of Janice Kendall, and despite the repeated objections of the defendant, the prosecutor asked eleven questions which emphasized vulgar statements the defendant had made only once. Second, the prosecutor, in another question, characterized as "threats" the conversation that Janice Kendall had overheard. However, there was no testimony of "threats," and the trial judge finally directed the prosecutor to confine himself to language used by the witness. The third and most serious charge raised by the defendant of improper trial tactics involved the cross-examination of a defense witness. The witness, who was not being asked to authenticate the exhibit, was shown a photograph. After some difficulty the witness identified the object in the photograph as a dead body. At this point, the

prosecutor interjected, "Looks like a piece of charred meat, doesn't it?"[2]  The judge denied the defendant's motion for a mistrial but struck the remark.

The Commonwealth contends that, although the prosecutor's last remark admittedly went far beyond permissible boundaries, no new trial is warranted because of the overwhelming evidence of the defendant's guilt. Furthermore, it argues that, although there was an undue emphasis on the expletives, the prosecutor was only trying to elicit a fact already in evidence and that any prejudice was insignificant. These arguments are not wholly persuasive.

The defendant's personality was not particularly one to create admiration or sympathy for him. Furthermore, the victim had been killed in a gruesome manner. In such circumstances, the prosecutor owed a particular care in discharging his duty to seek justice and not merely a conviction by trying the case factually and dispassionately without inflammatory tactics. See *Commonwealth* v. *Redmond,* 370 Mass. 591, 597 (1976). Cf. ABA Standards for Criminal Justice, The Prosecution Function § 3-1.1(c) (2d ed. 1980). The "charred meat" comment was clearly unjustifiable. Cf. *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 413 (1978). Such a characterization "could only have been made for [its] emotional impact. Such elements of irrationality and irrelevance introduced into the trial can only serve to make it less likely that the jury will return a verdict based on fair, calm consideration of the evidence." *Commonwealth* v. *Shelley,* 374 Mass. 466, 470 (1978). Furthermore, the inappropriate tactics of the prosecution did not relate to collateral issues but rather to material facts. Cf. *Commonwealth* v. *Nordstrom,* 364 Mass. 310, 316 (1973).

The unnecessary, repeated emphasis on the foul language allegedly used by the defendant, the reference to "threats"

---

[2] There was no demonstrated evidentiary need with this witness to refer to the photograph of the corpse. The question, "Looks like a piece of charred meat, doesn't it?", can be viewed only as a deliberate attempt to inflame the jury.

as to which there was no evidence, or the tactic of using a witness to emphasize the gruesome nature of the crime by reference to an exhibit already in evidence, taken alone, might not warrant reversal, but the cumulative impact of such tactics must be considered. The deliberate, repeated, and improper tactics used by this experienced prosecutor created a significant danger of prejudice to the defendant. We need not decide, however, whether the cumulative impact of such tactics is sufficient to require reversal. Instead, we consider the effect of these tactics in conjunction with the impact of the prosecutor's closing argument.

2. *Closing argument.* The prosecutor made five comments during his closing argument, each of which the defendant claims is sufficient to violate his due process rights. Some of these alleged errors, taken alone, do not appear to have created reversible error. We consider the claims seriatim.

a. *Personal belief of prosecutor.* In discussing the theories under which the defendant could be convicted of murder in the first degree, the prosecutor allegedly expressed his personal belief that "[a]ny one of those three [theories] would be enough to convict Stephen Smith of the crime of which he is charged, and I submit to you, the crime that he deserves to be convicted of." "To permit counsel to express his personal belief in the testimony . . . would afford him a privilege not even accorded to witnesses under oath and subject to cross-examination. Worse, it creates the false issue of the reliability and credibility of counsel. This is peculiarly unfortunate if one of them has the advantage of official backing." *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 547 (1971) (Tauro, C.J., dissenting), quoting *Greenberg* v. *United States*, 280 F.2d 472, 475 (1st Cir. 1960). It has long been held in this Commonwealth that the prosecutor may not prejudice the jury by imposing his personal beliefs. *Commonwealth* v. *Sherman*, 294 Mass. 379 (1936). See *Commonwealth* v. *Hoppin, supra* at 30.

A prosecutor who argues from the evidence and the inferences fairly drawn therefrom does not violate this prin-

ciple, however. This part of the argument in the case before us interjected no extraneous material or belief but expressed the prosecutor's view of the strength of the evidence. This was proper argument. *Commonwealth* v. *Daigle*, 379 Mass. 541, 550 (1980). *Commonwealth* v. *Stone*, 366 Mass. 506, 516 (1974).

b. *Comment on the defendant's demeanor.* The prosecutor commented on the defendant's demeanor during the trial by saying, "And you have had an opportunity to look at him during the trial as he squirms and smirks and laughs, or whatever you have seen him do." The jury were entitled to observe the demeanor of the defendant during the trial. "[T]he comment by the prosecutor did not suggest that he had knowledge the jury did not share." *Commonwealth* v. *Valliere*, 366 Mass. 479, 494 (1974). See *Commonwealth* v. *Borodine*, 371 Mass. 1, 11 (1976), cert. denied, 429 U.S. 1049 (1977). There was no error in this regard.

c. *Comments on evidence not admitted.* Defense counsel sought to remove the sting of the gruesome photographs of the victim's body by urging the jury, in his closing argument, not to be "blinded" by them. To counteract this argument, the prosecutor made an ambiguous statement possibly referring to photographs of the body not admitted in evidence.[3] The remark has two possible interpretations. The first is that the prosecutor was referring to his knowledge of evidence not before the jury. Alternatively, he was merely urging the jury to review carefully the actual exhibits.

Counsel for either side is not permitted to refer to evidence not admitted at trial. See *Commonwealth* v. *Hoppin, supra* at 30; *Commonwealth* v. *Burke*, 373 Mass. 569, 575 (1977). The photographs, however, were not passed among the jurors when they were introduced as exhibits.

---

[3] The statement was: "You haven't seen close up, I submit to you, all the pictures in this case. Mr. Davis said they are gruesome, they are gory. But look at them, because you are going to have to make a determination . . . ."

In such circumstances the Commonwealth's explanation for the prosecutor's remarks is plausible. Although the prosecutor could have chosen his words more carefully, his remarks in this regard, even if error, would not be sufficient to overturn the convictions.

d. *Comment on the defendant's failure to testify.* In response to defense counsel's proper strategy of questioning Fallavollita's credibility because of his plea bargain with the Commonwealth, the prosecutor said, "I submit to you the only evidence we have here of what the defendant Smith has said outside of court, not guilty, not guilty and no more."[4] The defendant argues that his Fifth Amendment right against self-incrimination, exercised by not taking the witness stand, was violated by the prosecutor's reference to the defendant's silence. See *Griffin* v. *California,* 380 U.S. 609 (1965). Claiming that there was another connotation to the prosecutor's reference to the defendant's silence, the Commonwealth contends that the prosecutor was simply offering the jury an explanation for the plea bargain with Fallavollita. While this court has recognized the "fight fire with fire" concept (*Commonwealth* v. *Burnett,* 371 Mass. 13, 19 [1976]), it is limited to correcting errors for which the defense counsel is responsible. *Commonwealth* v. *Haas,* 373 Mass. 545, 561 (1977). There was no such error by the defense. Indeed, in oral argument before us, the Commonwealth admitted the closing argument of the defense counsel to be proper. Thus, the "fight fire with fire" concept is inapplicable.

Whatever the prosecutor's intent, his remarks were "reasonably susceptible of being interpreted as a comment on [the defendant's] failure to take the stand." *Commonwealth* v. *Domanski,* 332 Mass. 66, 69 (1954). Such conduct is, of

---

[4] The prosecutor's other remarks on Fallavollita's plea bargain were: "Why Fallavollita? Why did Fallavollita get the deal? I submit to you, did Fallavollita come in and say, 'Hey, I want to plead guilty. I am guilty, so I want to plead guilty'? Is he along the road to rehabilitation? Is part of being rehabilitated saying, 'I did something wrong and I should be punished'?"

course, improper. *Commonwealth* v. *Gouveia,* 371 Mass.
566, 571 (1976). Cf. *Commonwealth* v. *Smallwood,* 379
Mass. 878, 891 (1980). Counsel may attempt to assist the
jury in analyzing evidence by presenting a comprehensive
picture but may not draw any inference from the exercise of
a constitutional right. *Commonwealth* v. *Ferreira,* 381
Mass. 306, 316 (1980). No curative instruction was given,
despite the fact that the defendant raised this and the other
alleged improprieties at the close of the prosecutor's argu-
ment. A conviction must be set aside for such an impropriety
unless harmless beyond a reasonable doubt. *Commonwealth*
v. *Hawley,* 380 Mass. 70, 89 (1980). The prosecutor's stress
on the defendant's failure to testify can hardly be said to be
"harmless" beyond a reasonable doubt. *Id.* at 87, 90.

e. *Inflammatory appeals.* The defendant claims that the
prosecutor also appealed to the passions of the jury by
speculating whether a stab wound to the heart would hurt
and whether the victim had felt the flames of the fire.[5] The
defendant maintains that the prosecutor's speculative argu-
ment as to extreme atrocity and cruelty was improper
because such speculation appealed to the jury to convict the
defendant out of sympathy for the victim.

A verdict must be based only on facts established by evi-
dence beyond a reasonable doubt. It is the evidence, not

---

[5] The full text of the prosecutor's rhetorical question is:

"What is extreme atrocity and cruelty? Is one stab wound, when a
knife blade punctures into your heart, when a knife blade goes into your
heart, a knife blade similar to this, perhaps [pointing], goes into your
heart? Is that extreme atrocity and cruelty? There is a stab wound to the
heart. What does it feel like? Does it hurt? Has anyone ever suffered
that here?

"How about a stab wound to the lung, to the right lung; how about a
stab wound to the left lung, the stab to the bladder, the stab through the
stomach? What was it, 31, 36 stab wounds, to the heart, to the bladder,
to the stomach, to the kidneys, slicing and slicing and slicing McArthur
until he was cut to what? To what the pictures show you. Is that extreme
atrocity and cruelty? Was he alive? Was he alive when they li_ the fire to
destroy fingerprints, to destroy whatever evidence there was? Did he feel
the flame come at him? You can decide that. You can decide it."

the sympathy, that must be the foundation of the jury's decision. See *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 424 (1978).

There was no evidence that the victim was alive at the time of the fire. Indeed, the medical evidence presented by the prosecutor's witness was that the victim's death was caused by the stab wounds and that the victim had died before his body was burned. The prosecutor's argument about whether the victim felt "the flame come at him" was not only pure speculation but also was contrary to the evidence. Thus, the prosecutor's closing argument in this regard was improper.

The Commonwealth attempts to defend the prosecutor's remarks by arguing that he "struck a hard but fair blow." This characterization of this aspect of the closing argument is not supported by the record.

f. *Remarks on the consequences of the jury's decision.* Finally, the prosecutor ended his closing argument with an emotional, inflammatory speech that commented on the consequences of the jury's decision.[6] The prosecutor stated,

---

[6] Referring to the consequences of the jury's decision, the district attorney said:

"If you want to believe it, you go out to that jury room and you sit there and you decide and you say, 'Hey, William McArthur is really alive in Brazil, but he is just not here.' I submit you can do that, because that's within your province. You can say this never happened. It's ugly, it's bad, I don't like it, it never happened. You can say that Richard Fallavollita who pleaded guilty to these crimes was never there, that he is having — it is a figment of his imagination. You can say that Bruce Gorham and Stephen Smith were never part of it. You can say that there wasn't 31 stab wounds, or 36 stab wounds. You can say that the throat wasn't slit. You can say all those things. You can say that the clothes weren't burned. You can say that Smith didn't say all these things to every witness who came in, because that is your province. And if you do, if that is your decision, you come back and you tell your foreman to stand up and say Stephen Smith is not guilty, because that will be your decision, and that's your right and privilege. And if you believe that, that's what you ought to do.

"And if you believe that, you take Stephen Smith out the door with you and turn him loose again on society, because that is what you are saying should happen.

". . . .

"And to say less is for all of us, for you as jurors, for me as a prosecutor, for Mr. Davis, to laugh at the system that we have before us."

in effect, that a person like the defendant should not be let loose on society. It was highly improper for the prosecutor to imply that the defendant should not be allowed to "walk the streets." "Neither the judge nor counsel may inform the jury of the consequences of their verdict." *Commonwealth* v. *Burke,* 373 Mass. 569, 576 n.3 (1977). ("You have . . . to decide whether or not someone like Mr. Burke is going to go out in the streets again." *Id.* at 574.) See *Commonwealth* v. *Killelea,* 370 Mass. 638, 645, 646-647 (1976). The impropriety by the prosecutor was not an isolated remark. Cf. *Commonwealth* v. *Belton,* 352 Mass. 263, 270 (1967). Taken together with the other prosecutorial errors, this remark was certainly outside the acceptable perimeter of closing argument.

3. *Conclusion.* Although counsel for the defendant objected to all these remarks at the end of the prosecutor's argument, he failed to request curative instructions, nor did he request additional instructions after the charge by the judge. Nevertheless, we believe that he adequately preserved his appellate rights. Although the trial judge should be provided with a fair opportunity to correct "ambiguous or misrepresentative statements at a time when such a correction could be achieved easily and without prejudice to either side," *Commonwealth* v. *Hooks,* 375 Mass. 284, 296 (1978),[7] "we have not made a fetish of the form or persistence of the objections." *Commonwealth* v. *Hawley, supra* at 86. See *Commonwealth* v. *Hoppin, supra* at 29 n.4. It is hardly fitting for a prosecutor to rely on curative instructions to present his case properly. See *Commonwealth* v. *Borodine,* 371 Mass. 1, 12 (1976), cert. denied, 429 U.S. 1049 (1977). In addition, in light of the broad review power granted to this court in capital cases under

---

[7] We have said that, as to clear prejudicial excesses by the prosecutor, the preferable practice is for the judge to intervene then and there on his own motion. See *Commonwealth* v. *Hawley, supra* at 85; *Commonwealth* v. *Shelley,* 374 Mass. 466, 473 (1978); *Commonwealth* v. *Gouveia,* 371 Mass. 566, 571 (1976); *Commonwealth* v. *DeChristoforo,* 360 Mass. 531, 549 (1971).

G. L. c. 278, § 33E, it is proper for us to review errors to determine if there is a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Ferreira*, 381 Mass. 306, 316-317 (1980); *Commonwealth* v. *Fitzgerald, supra* at 416; *Commonwealth* v. *Shelley, supra* at 469.

We recognize that there was much evidence of the defendant's guilt. The Commonwealth urges us to follow *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 539 (1971), and hold that the remarks of the prosecutor were insignificant as viewed in the context of the weight of evidence of guilt. However, not only were some of the comments by the prosecutor independently harmful, but "the prejudicial impact of the prosecutor's charge should be assessed by looking at the combined effect of all his errors." *Commonwealth* v. *Borodine, supra* at 11. Looking at the cumulative effect of the prosecutorial errors during the trial and the closing argument, reversal is required. See *Commonwealth* v. *Burke, supra* at 577.

Accordingly, the judgments of conviction are reversed, the verdicts set aside, and the case is remanded for a new trial.

*So ordered.*


ABRAMS, J. (concurring). While I can concur in the result reached by the court, I think it necessary to add the following remarks. Every experienced prosecutor knows that "a bad argument can lose a good case."[1] Codinha, Trial Tac-

---

[1] We have said that "we shall not tolerate misconduct by lawyers during the persuasion phase of a criminal trial." *Commonwealth* v. *Haas*, 373 Mass. 545, 557 (1977). However, experienced prosecutors know that we do not name the erring prosecutor in our opinions; we simply indicate, if such is the case, that appellate counsel is not the person responsible for the misconduct at trial. See, e.g., the majority opinion, *supra* at 901 n.1; *Commonwealth* v. *Hoppin, supra* at 26 n.2; *Commonwealth* v. *Ferreira*, 381 Mass. 306, 315 n.12 (1980); *Commonwealth* v. *Roberts*, 378 Mass. 116, 119 n.3 (1979); *Commonwealth* v. *Shelley*, 374 Mass. 466, 473 n.3 (1978).

tics for Prosecutors: Closing Argument, MCLE-NELI 171 (1979). That is exactly what happened here. Due to the misconduct of an experienced prosecutor, we are forced to reverse a strong Commonwealth case.

The prosecutor's misconduct in this case penalizes taxpayers by requiring the expenditure of thousands of dollars for a new trial. The prosecutor's misconduct requires reallocation of scarce police, prosecutorial, and judicial resources from new prosecutions to this retrial. The prosecutor's misconduct forces the friends and family of the victim to relive the trauma of the crime and again suffer the ordeal of a trial. The prosecutor's misconduct penalizes the defendant, who again must undergo the fear and anxiety associated with a criminal trial. Why, then, is the prosecutor, whose conduct results in such consequences, not named in our opinion?[2]

Experienced prosecutors, including this prosecutor, know that "juries for the most part do their duty, and find in accordance with the facts," and that prosecutors should only "[d]iscuss the issues, the evidence and the credibility of the witnesses [and that they should] not misstate the evidence in closing argument." Codinha, *supra* at 171, 176. Well knowing these principles, this prosecutor appealed to the passions of the jury, went outside the scope of the evidence, and commented on the defendant's silence. He knew that such tactics went beyond "the bounds of decency and fairness and [were] calculated to 'sweep [the jury from a calm and fair] assessment of the evidence.'" Codinha, *supra* at 173, quoting *Commonwealth* v. *Graziano,* 368 Mass. 325, 332 (1975).

---

[2] There is no question that we have given ample warning to prosecutors that we are concerned with excesses in prosecutorial summation. See, e.g., *Commonwealth* v. *Roberts, supra* at 117-118; *Commonwealth* v. *O'Brien,* 377 Mass. 772, 778 (1979); *Commonwealth* v. *Haas, supra; Commonwealth* v. *Earltop,* 372 Mass. 199, 204-207 (1977) (Hennessey, C.J., concurring); *Commonwealth* v. *Johnson,* 372 Mass. 185, 196-198 (1977). Prosecutors well know that a prosecutor's closing argument is a "vulnerable area in which . . . an otherwise well-tried Commonwealth case" can be reversed. Codinha, *supra.*

We fail in our duty to the public and the Bar when we do not penalize publicly those prosecutors who engage in egregious conduct. I, therefore, respectfully dissent from the decision of the majority not to name the prosecutor in our opinion.[3]

---

[3] Whether we identify the prosecutor or not in our opinions, the Board of Bar Overseers may seek its own sanctions. (At present the Board issues private reprimands.)