COMMONWEALTH vs. JUAN D. DEJESUS.  February 28, 1984.  *Practice, Criminal,* Argument by prosecutor.

After a Superior Court jury trial, the defendant was acquitted on a charge of first degree murder and convicted on a charge of arson of a dwelling.  The charges stemmed from the early morning July 29, 1982, burning of a dwelling in Chelsea occupied by the defendant's former girl-friend Leona Ortega and her children.  One of Ortega's children died in the fire.  Represented by new counsel on appeal, the defendant argues that the arson charge must be retried because a portion of the prosecutor's final argument was prejudicial.  We affirm the conviction.

The criticized argument came about as follows.  At trial, one Domingo, an inmate at the Charles Street jail, was called as a Commonwealth wit-ness.  Domingo testified that while he was incarcerated next to the de-fendant in March of 1982 the defendant "told me that he burned a girl, and her baby died in a fire."  Domingo also testified that the defendant stated he had committed the crime because Ortega kept bothering him after they broke up despite his threat to "burn her" and that "he would beat this trial because they had no witnesses against him."  Cross-exami-nation by the defendant's experienced trial counsel revealed, among other things, that Domingo was awaiting trial for burglary, that he had commit-ted prior robberies, that he had served time before, that he did not think himself a "rat," and that his bail had been reduced from "a hundred thou-sand dollars . . . to five thousand dollars or five hundred cash."  Domingo was unable to raise the reduced bail and remained in custody.  He denied that the bail reduction occurred as a result of his supplying information to the Commonwealth and attributed it solely to the efforts of a new lawyer.  He also denied that he had been offered any promises, rewards, or induce-ments for his trial testimony, and none was shown.  It was later suggested in testimony by the defendant that Domingo may have picked up (and distorted for his own benefit) information the defendant had told another inmate named Ricky.

Armed with the fact of the bail reduction, defense counsel in summation suggested that the jury should:

> "find it quite significant that in March of this year [Domingo] was lodged at the Charles Street jail held in lieu of one hundred thou-sand dollars bail . . . if [Domingo] was looking to feather his own nest a little bit and to try to get some help from the government in connection with the charges standing against him, . . . how much help do you think they are going to give him if he goes to them and says . . . . he says that they don't have any case against him."

Defense counsel repeated the theme again and then argued that Domingo had contrived his testimony:

"[i]n order . . . to sell his story to the people that he is talking to, that he is looking to get some help, to get his bail reduced or to help him get a light sentence on his case or maybe to help him to get no sentence . . . . [Domingo] took some bits and pieces of information that he got from Ricky . . . ., and put the pieces together . . . he wanted to add something to it so that it would make a nice thing that he would spoon-feed to the D.A. and the police about giving him some kind of a break on his cases."

To counter this argument, the prosecutor in his closing asked the jury to consider whether more favorable treatment than a bail reduction could have been furnished the witness if he in fact had been bargaining with the government. The prosecutor then expanded on the point by asking:

"Do you think the Commonwealth could do a little better than that for him? Do you think that's the best we can do for an informant if we are going to take care of him?"

An objection by defense counsel was overruled and the prosecutor continued by asking:

"Is that the best we are going to be able to do, knock it down to five hundred dollars cash? And what's the point? He is still in custody. Do you think we are going to let him stay there if we have all these promises and rewards and we are going to take care of him? Because, after he testified in this court, where did he go? Back to Charles Street. What do you think the atmosphere is down there for him?"

A second objection by defense counsel was sustained at this juncture, and the prosecutor promptly shifted to another line of argument.

At the conclusion of argument, the judge called counsel to side-bar and noted that defense counsel had made "a couple of objections during [the prosecutor's] argument." He then asked defense counsel if "there [is] anything you want me to call to the jury's attention during the course of my instructions?" Defense counsel did not request an instruction on the now-criticized portions of the prosecutor's argument. The judge then indicated his intention to instruct the jury that "the facts are entirely up to [the jury] and . . . the fact that a lawyer says [something] is a fact doesn't necessarily make it so." The judge then proceeded to charge the jury, without objection, in keeping with his expressed inclination.

The boundaries of permissible final argument have been often stated, see *Commonwealth* v. *Earltop*, 372 Mass. 199, 205 (1977) (Hennessey, C.J., concurring); *Commonwealth* v. *Burke*, 373 Mass. 569, 574-577 (1977); *Commonwealth* v. *Smith*, 387 Mass. 900, 907 (1983), and include

a right of fair reply by a prosecutor to impressions created by the defendant's closing. See *Commonwealth* v. *Dias,* 14 Mass. App. Ct. 560, 565 (1982), and cases cited. We think the prosecutor's argument was consistent with the evidence and the reasonable inferences that could be drawn therefrom and that it constituted a fair response to the defendant's obviously proper argument on Domingo's credibility.

But even if the argument could be considered improper we would not reverse because we see nothing in the argument which was likely to have affected the trial's outcome. On that point, we note the existence of substantial evidence of the defendant's guilt, see *Commonwealth* v. *DeChristoforo,* 360 Mass. 531, 539 (1971), the relative isolation of the remarks, and the absence of any other errors by the prosecutor. See *Commonwealth* v. *Smith, supra* at 912. We also note defense counsel's choice not to request any curative instruction concerning his objections to the prosecutor's argument, despite being expressly asked by the judge whether he wanted such an instruction and defense counsel's failure to object to the judge's proposed instruction on the general functions of counsel and the jury. While requests and objections are not necessary to save rights in cases where the remarks are particularly egregious, see *Commonwealth* v. *Smith, supra* at 911, their absence may suggest a tactical choice by defense counsel. Here defense counsel likely felt that the jury could impartially assess the merits of the charges and fairly evaluate Domingo's testimony, in light of his dubious character and impeachment, without being misled by the prosecutor's argument. This perception may have been reasonable since the jury acquitted the defendant on the first degree murder charge. This last fact is of consequence in our determination that no serious damage could have occurred. We conclude, after examining the entire trial record, that the remarks were not likely to have affected the jury's ability to render an impartial verdict.

*Judgment affirmed.*

*Richard Zorza* for the defendant.

*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.