## COMMONWEALTH *vs.* MARK CARL FLINT.

No. 10-P-674.

Plymouth. October 12, 2011. - May 30, 2012.

Present: GRAINGER, FECTEAU, & AGNES, JJ.

*Rape. Due Process of Law,* Transcript of trial. *Evidence,* First complaint. *Practice, Criminal,* Transcript of evidence, Hearsay.

In the circumstances of a criminal case in which the complete record of the trial proceedings was not available to the defendant on appeal, through no fault of the parties, a new trial was not constitutionally required, where the judge reconstructed the trial record after conducting evidentiary hearings, considering and receiving in evidence all available trial-related papers, relying in part on his memory and the notes maintained by counsel, considering his own custom and practice, and taking testimony from the trial attorneys [800-801]; where the negligence of the court reporter in delaying the production of the transcript, although attributable to the Commonwealth in that the reporter was a State actor, did not automatically warrant a new trial and did not excuse the defendant from participating in an effort to reconstruct the record [802-803]; and where the judge's findings in reconstructing the record were supported by the evidence and were not clearly erroneous [803-804]; further, there was no impediment from the absence of a complete copy of the trial transcript to the performance by appellate counsel for the defendant of her role as an active advocate or to this court's duty to conduct a meaningful review [801-802].

At a rape trial, the admission of testimony of multiple reports of abuse made by the victim, even if error, did not create a substantial risk of a miscarriage of justice, where the testimony was mild in comparison to the details of the allegations. [804-805]

At a rape trial, there was no abuse of discretion in the admission of testimony from the victim's wife as a first complaint witness, where the judge determined that the victim's disclosure was made in one conversation, and the admission of other conversations constituted evidence of the circumstances surrounding the making of that first complaint [805-806]; further, there was no error in the admission of testimony from the victim's wife about her observations of the victim's demeanor on one occasion. [806]

At a criminal trial, no substantial risk of a miscarriage of justice arose from the victim's testimony regarding the details of his dysfunctional family life. [806-807]

At a criminal trial, the prosecutor's closing argument, which included rhetorical questions regarding the victim's motives, was proper, in that it was fair for the prosecutor to reply to the defendant's assertions in closing argument of evidence of improper motives underlying the victim's accusations. [807]

INDICTMENTS found and returned in the Superior Court Department on September 10, 2001.

The cases were tried before *Patrick F. Brady*, J.; a motion to reconstruct the record, filed on October 21, 2008, was heard by him; and a motion for a new trial, filed on July 22, 2010, was considered by him.

*Stacey Gross Marmor* for the defendant.

*Gail M. McKenna*, Assistant District Attorney, for the Commonwealth.

AGNES, J. Mark Flint appeals from his convictions, in 2005, of rape of a child and attempt to commit rape of a child and from the denial, in 2010, of his motion for a new trial. The appeals were consolidated in this court. The case is before us on the basis of a reconstructed record. The three-day jury trial consisted of the testimony of three Commonwealth witnesses. The available record includes a transcript of pretrial motions, jury selection, the closing arguments, and jury instructions. The trial judge conducted an evidentiary hearing, and in accordance with *Commonwealth* v. *Harris*, 376 Mass. 74 (1978), reconstructed the missing record, which includes the opening statements and the direct and cross-examination of the three witnesses.

On appeal, the defendant contends that (1) the absence of a complete transcript of his three-day trial violates his constitutional rights to due process, equal protection, and effective assistance of counsel; (2) the negligence of the court reporter in failing to produce a complete trial transcript should be imputed to the Commonwealth, with the result that the defendant should receive a new trial; (3) the reconstructed trial record is not accurate or sufficient to enable the defendant to have a meaningful appeal; and (4) notwithstanding an inadequate record, the defendant is entitled to a new trial because of various violations of the first complaint doctrine. For the reasons that follow, we affirm.

*Factual background.* 1. *Procedural history.* The defendant was tried before a jury in the Superior Court from December 6-8, 2005, and sentenced on December 19, 2005.[1] The defend-

---

[1] On the first indictment (rape of a child), the defendant received a sentence to State prison of from four to six years. On the second (attempted rape of a child), the defendant was placed on straight probation for a period of five

ant filed a timely notice of appeal on December 23, 2005, and ordered a transcript of the evidence on December 28, 2005.

Filing of the trial transcript was delayed, and the defendant moved for its production on multiple occasions between March, 2006, and October, 2007, but the court reporter was able to provide only portions of the transcript. It was not until June 24, 2007, eighteen months after he first ordered a transcript of his trial, that the defendant was informed that the testimony of the witnesses was not available. On October 21, 2008, the defendant filed a motion to recreate missing portions of the record in accordance with Mass.R.A.P. 8(e), as amended, 378 Mass. 932 (1979).

Hearings on the reconstruction of the record took place on April 13, 2009, and May 18, 2009. The trial judge heard testimony from both attorneys and received numerous exhibits, including defense counsel's trial notes, the prosecutor's outline of opening statements, and her direct examination outlines and cross-examination notes for the three witnesses who testified. At the judge's request, the parties conferred and submitted documents containing areas of agreement and disagreement with regard to the contents of the record. The judge issued his reconstruction of the record on August 7, 2009.

*2. Motion for a new trial.* On July 22, 2010, nearly one year after the judge issued his reconstruction of the record, the defendant filed a motion for a new trial in which he asserted that he was entitled to a new trial due to the incomplete and inadequate record and the admission of evidence in violation of the doctrine of first complaint. The judge denied the motion without a hearing on August 2, 2010.

*3. Undisputed record evidence.* The parties do not dispute that the jury heard the following testimony from the Commonwealth's witnesses. We provide it in detail to give context to the claims of error asserted by the defendant.

As a young child, the victim was exposed at home to behavior by his mother involving nudity and sexual relations with other

years, to be served from and after his sentence on the rape conviction. The defendant was found not guilty on the third indictment, which charged indecent assault and battery on a child under the age of fourteen.

adults in his presence, and he was sexually assaulted by an older brother. The victim met the defendant, a United States Air Force recruiter, at the Air Force recruiting office in Brockton, where the victim accompanied his brother who was interested in joining the Air Force. The defendant befriended the victim and eventually brought him fishing, to the recruiting office, and to his home.

The defendant first sexually assaulted the victim when he was in the fifth or sixth grade and eleven or twelve years old. The pair were wrestling when the victim pulled down the defendant's sweat pants and exposed the defendant's genitalia. The victim performed oral sex on the defendant, and the defendant did the same to him. The defendant and the victim saw each other thereafter three or four times each week. When the defendant moved to an apartment on Simmons Avenue in Brockton, he would drive the victim there. The defendant also told the victim to be quiet and not to tell anyone about their relationship because he (the defendant) would get into trouble.

The victim described several instances while he was visiting or sleeping over at the defendant's Brockton apartment where the defendant approached him, in the nude, and each performed oral sex on the other. Once, the defendant told the victim to stop because the defendant wanted to collect his ejaculate to use with his wife in trying to conceive a child. The victim also testified that the defendant tried to penetrate him anally but stopped when the victim said it hurt. The defendant and the victim also performed oral sex on each other at the Air Force recruiting office. The victim testified that the defendant had a circumcised penis and a mole or scar on his back. The defendant's abuse of the victim lasted for several years, until the defendant was transferred in 1989.

The circumstances of the victim's disclosure of the abuse and the steps taken to report it are discussed in detail in the next section.

4. *Judge's reconstructed record.* The judge determined that both parties' opening statements referred to the victim's childhood in a dysfunctional family. The prosecutor made specific reference to the victim's alcoholic mother, his physically abusive father, and his sexual abuse by an older brother. The judge also

found that these details were elicited by the prosecutor in her direct examination of the victim and that it was "unlikely" that there were objections by the defendant, "[g]iven defense counsel's strategy of attempting to portray [the victim] as a product of a severely traumatic childhood and thus prone to fantasizing."

The judge found that the victim had testified that he did not disclose his sexual abuse by the defendant until 2001, when the victim's second wife began to ask him about whether he "had a sexual fantasy." The victim stated that he wanted to have sex with her and the defendant, as they were the two people he loved. Eventually, over time, after she pressed him for details about the relationship he had with the defendant, the victim disclosed to his wife the details of his abuse as a child by the defendant. The judge found that the defendant objected to the testimony "insofar as it involved a series of conversations over time." The judge overruled the objection because even though the victim and his wife had multiple conversations about the defendant leading up to the disclosure of sexual abuse, "only one conversation about the sexual assaults was introduced on direct examination." The judge also found that the victim had testified on direct examination that he reported the abuse by the defendant to Jim Corr of the United States Air Force and thereafter to the Brockton police. The judge concluded "with substantial certainty" that there was no objection to this testimony.[2] The judge rested his conclusion on the pretrial proceedings in which defense counsel focused on the then-recent decision in *Commonwealth* v. *King*, 445 Mass. 217 (2005), cert. denied, 546 U.S. 1216 (2006), decided less than three months before the trial.[3] The judge also determined that defense counsel

---

[2] The judge also observed that until the decision in *Commonwealth* v. *Stuckich*, 450 Mass. 449, 457 n.11 (2008), issued after the trial in this case, he was not aware that a statement by the victim that he complained to law enforcement, absent evidence of the contents of the statement, was barred by the first complaint doctrine. The judge added that "[i]f defense counsel had raised the objection that this type of reference to telling the authorities about the sexual assault was prohibited by [*Commonwealth* v.] *King*, [445 Mass. 217 (2005), cert. denied, 546 U.S. 1216 (2006),] I believe I would remember such an objection."

[3] Defense counsel testified that he objected to the testimony by the victim and his wife about their contacts with the Air Force and the victim's contact with the Brockton police. The judge did not credit this testimony.

cross-examined the victim about the various people he informed of the sexual assaults, including his wife, the prosecutor, a victim-witness advocate from the district attorney's office, Detective Cummings from the Brockton police department, and a prior assistant district attorney. Defense counsel also elicited the fact that the defendant and his wife met with Corr and Detective Cummings, and that the defendant had numerous conversations with Corr.

The judge determined that Detective Cummings had testified that on April 21, 2001, she received a telephone call from Corr informing her that the victim had reported a sexual assault committed by the defendant at the Air Force recruiting office in Brockton. The judge found that there had been no objection by the defendant to this testimony. The judge also found that Detective Cummings had testified that Corr faxed an initial report of the victim's allegation to her, telling her that "the Air Force was unable to prosecute these allegations" due to the statute of limitations. Detective Cummings was found to have testified that the victim and his wife gave statements about the alleged sexual assaults. The judge found that there had been no objection to this testimony.[4] Detective Cummings also testified, without objection according to the judge, that she had confirmed the identity of the defendant, his residence at 49 Simmons Avenue at the relevant time, his employment as an Air Force recruiter (i.e., April, 1985 to April, 1989), his ownership of a Ford Pinto automobile at the time, and that he had been transferred in 1989 to Pease Air Force base in New Hampshire, and then to Japan. The judge found that the cross-examination of Detective Cummings focused on investigative steps that were not taken.

The judge found that the victim's wife had testified that, in a series of conversations with her husband about "sexual fantasy," he disclosed that he "loved the defendant," and eventually, that

---

[4]The judge further explained that Detective Cummings did not testify to any of the details of her conversation with the victim and his wife, that she (Cummings) was not the first complaint witness, and that his instructions to the jury "followed verbatim the proposed instruction set forth in the *King* case. The final instructions refer specifically only to [the victim's wife's] testimony, and do not mention Detective Cummings['s] testimony."

he had a sexual relationship with him.[5] The judge determined that he gave the jury a preliminary first complaint instruction prior to the wife's first complaint testimony. The judge found that the defendant had preserved his objection to the wife's testimony about multiple conversations with the victim, but that there were no objections to her testimony that the victim contacted the Air Force and registered a complaint, and when she and the victim learned that the Air Force could not pursue his complaint, she accompanied the victim to the Brockton police station where they provided statements. The judge also found that the victim and his wife had visited the Simmons Avenue apartment where the defendant had allegedly lived, and upon viewing it, the victim "appeared to be 'physically shaking and crying.' " There was an objection to this testimony, but it was overruled.

*Discussion.* 1. *The absence of a complete transcript of the trial.* In *Commonwealth* v. *Harris*, 376 Mass. at 77-78, the Supreme Judicial Court established guidelines to address cases in which a complete record of the trial proceedings is not available to a criminal defendant on appeal. "[I]f the proceedings at trial can be sufficiently reconstructed and presented to the appellate court, a new trial is not constitutionally required when the transcript is not available through no fault of the parties." *Id.* at 77.[6] The rule in *Harris* has been adopted throughout the nation. See *State* v. *Aquart*, 69 Conn. App. 21, 28 (2002) (collecting cases).

Here, the judge followed the procedure outlined in *Commonwealth* v. *Harris, supra,* for the reconstruction of the trial record. The judge conducted evidentiary hearings, considered

---

[5]In particular, the judge determined that the conversation occurred in their bedroom and that the victim "disclosed to [his wife] that he had a sexual relationship with the defendant that involved mutual fellatio, and attempted anal penetration." The judge also determined that the victim's wife testified "that her husband displayed a variety of emotions during this conversation that ranged from initially being moderately upset, then factual, and ultimately shutting down and becoming hysterical."

[6]See *United States* v. *Smith*, 292 F.3d 90, 97 n.6 (1st Cir. 2002), cert. denied, 538 U.S. 933 (2003), quoting from *Bundy* v. *Wilson*, 815 F.2d 125, 135 (1st Cir. 1987) ("[D]ue process does not require a full verbatim trial transcript, but only requires that a 'criminal appellant be provided with a record of sufficient completeness to permit proper consideration of his claims' "); *Commonwealth* v. *Harris*, 376 Mass. at 78.

and received in evidence all available trial-related papers, including the notes made by trial counsel prior to and during the trial, and invited counsel to submit draft reconstructions. The judge relied in part on his memory and the notes maintained by counsel. Although the judge did not have his own trial notes, he properly considered his own custom and practice. See *Commonwealth* v. *Hernandez*, 63 Mass. App. Ct. 426, 434 (2005). See also *Commonwealth* v. *Ashmon*, 434 Mass. 1005, 1006 (2001); *Commonwealth* v. *Jaime J.*, 56 Mass. App. Ct. 268, 276 n.6 (2002). It was entirely appropriate for the judge to take testimony from the trial attorneys in reconstructing the record. See *Commonwealth* v. *Duest*, 26 Mass. App. Ct. 137, 145 (1988); *Commonwealth* v. *Shea*, 46 Mass. App. Ct. 196, 200-201 (1999).

The defendant seeks to distinguish *Commonwealth* v. *Harris* by suggesting we rely instead on *United States* v. *Selva*, 559 F.2d 1303, 1306 (5th Cir. 1977), in which the court held that when a criminal defendant is represented on appeal by counsel other than the attorney at trial and a "substantial and significant portion of the record" is not available, it is prejudicial per se and a new trial is required. The *Selva* rule has been rejected by most courts. See *State* v. *Jenot*, 158 N.H. 181, 183-184 (2008) (collecting cases).[7]

Defense counsel also asserts that she was unable to serve as an "active advocate" on behalf of the defendant because she was not trial counsel and lacked a complete copy of a trial transcript. However, "to demonstrate denial of a fair appeal, an appellant must show prejudice resulting from the absence of the transcripts at issue." *State* v. *Milliken*, 985 A.2d 1152, 1157 (Me. 2010). In a case such as this one, where there is no dispute about what evidence was presented at trial and the judge was able to reconstruct the missing record, including the matters that were and were not the subject of an objection, there is no impedi-

---

[7]Moreover, in *United States* v. *Selva, supra,* as in *Commonwealth* v. *McWhinney*, 20 Mass. App. Ct. 444, 447 (1985), the court concluded that an adequate substitute for the missing transcript of the closing arguments could not be reconstructed. Here, the judge was able to reconstruct the record. See *State* v. *Rae*, 119 Conn. App. 740, 747 (2010). See also *United States* v. *Pace*, 10 F.3d 1106, 1124-1125 (5th Cir. 1993), cert. denied, 511 U.S. 1149 (1994). Contrast *Commonwealth* v. *Watts*, 22 Mass. App. Ct. 952, 953 (1986) (new trial required due to the impossibility of adequately reconstructing the record).

ment to the performance by counsel of her role as an "active advocate" or to this court's duty to conduct a meaningful review. See *Bundy* v. *Wilson*, 815 F.2d 125, 135-136 (1st Cir. 1987) (it is consistent with due process to impose on the defendant a burden of production to make an initial showing that there is a need to have a complete transcript on appeal). See also *Bransford* v. *Brown*, 806 F.2d 83, 86 (6th Cir. 1986), cert. denied, 481 U.S. 1056 (1987).

2. *The negligence of the court reporter.* The defendant also seeks to distinguish this case from *Commonwealth* v. *Harris*, *supra*, by contending that the negligence of the court reporter, a State actor, see G. L. c. 221, § 82 (court reporters are "sworn officers of the court"), should be imputed to the Commonwealth with the result that *Commonwealth* v. *Harris* is not applicable. While it is true that "delay in producing transcripts is conduct attributable to the Commonwealth," *Campiti* v. *Commonwealth*, 417 Mass. 454, 457 (1994), it does not automatically warrant a new trial and does not excuse the defendant from participating in an effort to reconstruct the record. See *Commonwealth* v. *Watts*, 22 Mass. App. Ct. 952 (1986) (reconstruction of the record accomplished when the court reporter disappeared and his notes were indecipherable).[8]

The general rule is that when transcripts are lost or destroyed, the passage of time itself does not render the process of reconstructing the record pursuant to *Commonwealth* v. *Harris*, *supra*, inadequate or superfluous. See *Drayton* v. *Commonwealth*,

---

[8]There is no evidence in this case that the delay was compounded by any deliberate efforts or negligence on the part of the district attorney or the staff of the trial court. To the contrary, the docket indicates that the administrative office of the Superior Court responded in a timely manner to the defendant's requests for assistance and made its own effort to obtain the transcript from the court reporter. The parties dispute whether the failure to ultimately produce tapes from which a transcript could be generated is due to the court reporter's negligence or mere unfortunate happenstance. However, there does not appear to be any dispute regarding the fact that the lengthy delay in determining that some of the tapes were unavailable or blank was attributable to the court reporter. Nor has there been any effort to excuse this delay. Despite the outcome of this case, such a failure is unacceptable. See Report of the Study Committee on Trial Transcripts 1 (2003) ("accurate and timely recording and transcription of trial proceedings is crucial to the fair, prompt, and efficient judicial review of cases"); *id.* at 3 (noting that transcripts are often delayed "unconscionably"); *id.* at 23 (noting that backlogs vary greatly among court reporters).

450 Mass. 1028, 1029 (2008) (reconstruction of record of trial that occurred more than thirty years earlier). See also *Commonwealth* v. *Hunt*, 22 Mass. App. Ct. 932, 933 (1986) (defendant not entitled to complete record so as to enable her to "dissect [it] in the hope of discovering hitherto unnoticed issues or errors").

3. *The adequacy of the reconstruction of the record.* The defendant's argument reduces to a complaint that the judge did not credit his position with respect to missing elements of the record. The judge gave the parties an opportunity to present all available evidence of what had occurred at trial, including the trial notes prepared by counsel, considered their live testimony and those portions of the record that had been transcribed, and relied on his memory and customary practice.

The defendant specifically faults the judge for crediting evidence supplied by the prosecutor in recreating the opening statements, relying on *Commonwealth* v. *McWhinney*, 20 Mass. App. Ct. 444, 447 (1985). In *McWhinney*, unlike the present case, the judge concluded that it was not possible to reconstruct the record because a substantial portion of it was missing (voice recordings were stolen from the stenographer's car), the record was described as "gravely incomplete," the only direct source of knowledge was what the court described as the assistant prosecutor's "sketchy notes," and other source material was deemed "unreliable." *Ibid.* The court reasoned that the defendant's principal issue on appeal (prosecutorial misconduct in making inflammatory remarks throughout the case) necessitated a consideration of the prosecutor's exact words. *Ibid.* Here, the judge considered a variety of sources about what occurred at trial, including his own memory and customary practice, and resolved the differences between the parties on the basis of the evidence. This is not a case in which the judge made an "educated guess" about what occurred at trial. See *Draper* v. *Washington*, 372 U.S. 487, 495-500 (1963).

The defendant also complains of findings by the judge discrediting the defendant's evidence of objections by the defendant to the admission of prejudicial hearsay in violation of the first complaint doctrine and irrelevant and prejudicial testimony about the victim's troubled childhood. These findings are entitled to the same deference to be given to findings of fact under

Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996),[9] provided they are based on (as in this case) reliable evidence such as (1) available transcripts of related proceedings, (2) the judge's own memory and customary practice, (3) the testimony of the trial lawyers and (4) contemporaneous secondary sources such as the trial notes of the lawyers. See *United States* v. *Carillo*, 902 F.2d 1405, 1410 (9th Cir. 1990); *State* v. *Williams*, 227 Conn. 101, 106 (1993). See also *Hernandez* v. *New York*, 500 U.S. 352, 365-366 (1991), discussing *Maine* v. *Taylor*, 477 U.S. 131, 145 (1986) (explaining rationale for applying "clearly erroneous" standard to factual determinations by judge in criminal cases on issues other than guilt). The judge's findings in reconstructing the record are supported by the evidence and not clearly erroneous.

4. *Evidentiary issues*. a. *Multiple reports by victim*. In the absence of an objection, we consider whether admission of the testimony was error and, if so, whether the error gives rise to a substantial risk of a miscarriage of justice. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). This requires an appellate court to determine, from an appraisal of the entire record, whether a serious doubt exists that the outcome of the trial might have been different had the error not been made. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967); *Commonwealth* v. *Azar*, 435 Mass. 675, 687 (2002).

The jury heard that the victim made a complaint to the United States Air Force and to the Brockton police department, in addition to what he told his wife as the first complaint witness. See Mass. G. Evid. § 413(b) (2012), and cases cited. The defense strategy in this case was to suggest that the victim's claims were based on his fantasy about a relationship with the defendant. Testimony that the victim reported his abuse to the Air Force and to the police shortly after he made the disclosure to his wife was "mild" in comparison to the details of the allegations, and did not create a substantial risk of a miscarriage of justice even if admitted erroneously. *Commonwealth* v. *Kastner*, 76 Mass. App. Ct. 131, 138 (2010).[10]

---

[9]Rule 52(a) provides in part that in "all actions tried upon the facts without a jury . . . [f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

[10]With regard to some of the details of the police investigation that were the

The defendant maintains that this case more closely resembles *Commonwealth* v. *Monteiro*, 75 Mass. App. Ct. 489 (2009). There, in addition to the first complaint witness, the Commonwealth offered evidence of reports by the victim to his mother, the prosecutor, and a social worker, and the investigating detective testified about the Sexual Abuse Intervention Network (SAIN) interview.[11] We ordered a new trial in *Monteiro* due to the cumulative impact of evidentiary errors.[12] Here, on the other hand, the testimony that the victim and his wife went to the Brockton police added nothing to what the jury heard from Detective Cummings, and there was nothing in the testimony about the report to Corr to suggest that the victim's complaint was credited or investigated.

b. *First complaint witness testimony.* Prior to trial, the judge ruled that the victim's wife qualified as a first complaint witness, and that conversations between her and the victim that culminated in his disclosure of sexual abuse by the defendant were also admissible under the newly established doctrine of first complaint. The judge's ruling, as reconstructed, was that the victim's disclosure was made in one conversation. The admission of other conversations fall within the ambit of *Commonwealth* v. *King*, 445 Mass. at 218-219, as evidence of "the circumstances surrounding the making of that first complaint." Even if details of the victim's report of his childhood sexual

subject of testimony by Detective Cummings, this evidence was admissible to counter the second line of the defendant's attack regarding the thoroughness of the police investigation.

[11]In *Commonwealth* v. *Monteiro*, 75 Mass. App. Ct. at 494, we observed that "the potential for prejudice was particularly strong. The very phrasing of the detective's description of SAIN interviews conveyed that they are convened when persons are thought to be victims of sexual assault. The testimony also implied that the detective, himself, found [the victim] credible, because he pursued the investigation as a result of seeing the tape."

[12]"Furthermore, the errors at trial were numerous, including additional errors that we have not discussed above. Apart from the SAIN interview testimony, there was other testimony regarding actions taken by [the victim's] family members, the department, and police in response to his claims that strongly implied that others believed him. While such testimony may, in particular cases, be sufficiently material to disputed issues or inextricably woven into the essential narrative of the Commonwealth's case to be admissible, their admission here was largely gratuitous. The evidence improperly vouched for the victim's claims." (Footnote omitted.) *Commonwealth* v. *Monteiro*, 75 Mass. App. Ct. at 498.

abuse by the defendant were embodied in multiple conversations with his wife, we discern no abuse of discretion. See *Commonwealth* v. *Aviles*, 461 Mass. 60, 73 (2011).

c. *First complaint demeanor testimony.* That the victim's wife was permitted to testify about her observations of her husband when they visited the apartment in Brockton where the defendant used to live was relevant, not remote in time to the disclosure, and not prohibited by the doctrine of first complaint. See *Commonwealth* v. *Starkweather*, 79 Mass. App. Ct. 791, 800-801 (2011). The lack of temporal proximity between the witness's observation of the victim's demeanor and the date of the sexual assault was not relevant given the delay between the assault and the disclosure.

d. *Victim's testimony about his dysfunctional childhood.* Both counsel made reference in their opening statements to the victim's "dysfunctional" family. In his closing argument, defense counsel emphasized the point, referring to the victim's "troubled, horrific, dysfunctional childhood."[13] Defense counsel also made reference to the victim as someone "living in a fantasy world; he's been having fantasies. And his fantasies have been growing and growing and growing . . . ."

The defendant maintains that the direct testimony by the victim regarding some of the details of his family life, including an alcoholic mother, an abusive father, and sexual abuse by his brother (all of which was first mentioned by the prosecutor without objection in her opening) was error in violation of the caution expressed in *Commonwealth* v. *Santiago*, 425 Mass. 491, 497 (1997). Unlike in *Santiago, supra* at 496-497, where it was observed that witnesses were called primarily to create an atmosphere of sympathy for the victim and where there were repeated and gratuitous references in the prosecutor's closing argument to the fact that the decedent was seventeen years old and pregnant at the time of her murder, the prosecutor in this case did not make improper appeals to the jury's natural sym-

---

[13]Defense counsel also referred to the victim as a man "with a very tormented, demented, twisted background from his environment," and stated that he "is the victim of a very twisted mental state." Defense counsel mentioned the particulars of the victim's troubled childhood, including his mother's open sexual activity in the home and his molestation by his brother, in arguing that it may have affected the victim's "grasp of reality."

pathies. Here, the evidence was relevant because the Commonwealth could properly explain what might have drawn the victim and the defendant together in the first place. See *Commonwealth* v. *Yeshulas*, 51 Mass. App. Ct. 486, 489 (2001). In addition, the judge's determination that it was "unlikely" that defense counsel objected to the evidence is consistent with the defense theory at trial that the victim's dysfunctional family and troubled childhood may have contributed to produce his fantasy about the sexual relationship with the defendant. There was no substantial risk of a miscarriage of justice.

e. *Prosecutor's references in closing argument to motive.* In his closing argument raising questions about the victim's motive, defense counsel suggested that the victim's wife drove him to make these allegations due to her "insecurity," "instability," or "jealousy." The defense also suggested that due to the victim's horrible childhood, he was "projecting all of this horror . . . onto a scapegoat." In the face of these direct assertions of evidence of improper motives underlying the victim's accusations, it was fair for the prosecutor to reply by asking the jury rhetorically, "Why would a person make up something like this? What is the motive to fabricate? Are they being honest? Are they responsive to questions? Are they being direct? Do they appear to be forthcoming? Do they appear to be genuine? Do they sound as if they are giving contrived answers?" Compare *Commonwealth* v. *Simmons*, 20 Mass. App. Ct. 366, 371 (1985).[14] These questions were specifically tied to the evidence. There was no injection of her personal beliefs, no implication that she had knowledge of facts outside the record, and no resort to attacks on the integrity of defense counsel or the defendant. "The prosecutor is entitled to make a fair reply to the defendant's closing argument." *Commonwealth* v. *Smith*, 404 Mass. 1, 7 (1989), citing *Commonwealth* v. *DeJesus*, 17 Mass. App. Ct. 1020, 1021-1022 (1984).

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*

[14]The defendant initially did not object to this line of argument by the prosecutor. Only when the prosecutor asked the jury again to look for evidence of a motive for the victim's accusations did he object.