NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-7

COMMONWEALTH

vs.

ANTHONY SHERLOCK.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant challenges his convictions, by jury, of rape, as a lesser included offense of aggravated rape; and assault and battery, as a lesser included offense of assault and battery causing serious bodily injury.[1]  He maintains that the trial judge erred by excluding deoxyribonucleic acid (DNA) evidence and that the prosecutor made impermissible statements during closing argument.  We affirm.

Background.  We summarize the relevant facts as the jury could have found them, leaving some for further discussion.  In early 2017, the victim did not have stable housing and was suffering from mental health issues.  While undergoing inpatient mental health treatment she met the defendant, also a patient,

_____

[1] The jury returned a not guilty verdict on the charge of kidnapping.

and the two began a consensual sexual relationship.  She left the inpatient facility with the defendant before her discharge date.  She did not bring her psychiatric medications and testified that the symptoms of withdrawal from those medications, which occurred over a four to five-week period, included irritability, poor decision-making, and poor judgment.

After spending the first night at a shelter in Providence, the two encountered the victim's parents, who had come to take the victim home.  The victim stayed with the defendant because he threatened to hurt her family if she left.  In the following days, the defendant took money, a cellular phone, and gift cards that the victim's mother had left her and took the victim by train to Cambridge.  There, they stayed in the dirt cellar of an apartment building, sleeping on the floor, for approximately two weeks.  During this time, the defendant was violent toward the victim, putting his hands around her throat, punching her in the back of the head (sometimes to the point of unconsciousness) and calling her names.  The victim testified that the defendant did not leave her alone during the time in Cambridge.

While in Cambridge, the victim had sexual intercourse with the defendant every day, sometimes multiple times a day.  They had oral, anal, and vaginal intercourse.  The defendant did not use a condom or other protection.  The victim did not always want to have intercourse with the defendant, and sometimes told

2

him so.  On other occasions, even though she was unwilling, she did not say "no" out of fear of the defendant's reactions, which had included his yelling at her, pushing her, putting his hands around her throat, and having intercourse with her despite her objections.  She testified that she never wanted to have anal intercourse, that it hurt her, and that the defendant forced her to engage in anal intercourse by grabbing and holding her.

After contacting her mother, the victim was approached by Cambridge police in the public library and was taken to a hospital because she complained that her head hurt.  The next day, after she had slept, showered, and changed her clothes, the victim went to a different hospital for a sexual assault examination.

Discussion.  1.  The DNA evidence.  The defendant moved in limine to admit the findings of the DNA analysis, specifically, that the testing "did not detect any sperm cells on any of the vaginal, anal, perianal or oral swabs," and that while DNA evidence retrieved from fabric from the crotch area of the victim's underpants revealed "a seminal fluid protein . . . indicating the presence of semen," screening tests for a seminal fluid enzyme were negative and sperm cells were not detected.  A DNA testing report of the same fabric revealed female DNA that matched the victim's profile.  It also revealed male DNA that

3

was "a mixture of at least four male contributors" and "not suitable for comparison due to the quality of the profile."

The defendant sought to introduce this evidence as relevant to show (1) "that [the victim's] physical condition at the time of the examination [was] inconsistent with the allegations against the Defendant" -- that is, had she been vaginally, orally, and anally raped, as she reported, there should have been biological material on her body -- and (2) "evidence of multiple male DNA contributors tends to negate the Commonwealth's assertion that [the victim] was held captive and incommunicado." The defendant maintained that "evidence that [the victim] had physical contact with at least three individuals other than the Defendant" was relevant to assessing the claim that the defendant did not allow her any freedom, which, in turn, was relevant to the kidnapping charge. Although the defendant summonsed the Commonwealth's criminalist and analyst to the trial, he proffered no expert report or other offer of proof as to what testimony they would give about the DNA evidence.[2]

"We review evidentiary rulings for abuse of discretion," Commonwealth v. Denton, 477 Mass. 248, 250 (2017), reversing

---

[2] The defendant was permitted funds to retain a forensic serologist, but produced no report or affidavit, and the serologist was not called as a trial witness.

only if the judge made "a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (quotation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). "All evidence must meet a threshold test of relevancy such that it has a 'rational tendency to prove an issue in the case'" (citation omitted). Commonwealth v. Ng, 491 Mass. 247, 264 (2023).

"Even relevant evidence may be inadmissible, however, where its probative value substantially is outweighed by the danger of unfair prejudice." Ng, 491 Mass. at 264. "A judge generally is accorded substantial discretion in deciding whether evidence is relevant, and if so, whether it nevertheless should be excluded as less probative than prejudicial." Commonwealth v. Mattei, 455 Mass. 840, 850 (2010). Such deference applies to a judge's decisions to admit or exclude DNA test results. Id.

Where DNA testing reveals a positive result, test results are not admissible "without telling the jury anything about the likelihood of that match occurring" (citation omitted). Mattei, 455 Mass. at 850. "The same reasoning applies to evidence that a DNA test, although resulting in less than a complete 'match,' could not exclude a particular individual as a potential contributor," because "[w]ithout reliable accompanying evidence . . ., the jury have no way to evaluate the meaning of the

result."  Id. at 851-52.  "We have repeatedly acknowledged the importance of statistical analyses to explain DNA matches to the jury, concluding that the probative value of a DNA match is negligible without such analysis."  Commonwealth v. Lester, 486 Mass. 239, 246 (2020).

Here, the DNA findings were before the judge, but the necessary accompanying evidence -- whether in the form of an expert report, an offer of proof, or other proffer -- was missing.  The defendant maintains that he had experts available to testify at trial, but this argument misses the mark.  As the cases recognize, DNA evidence is not self-explanatory.  Without an expert interpreter, the judge could not be expected to know what the test results meant -- for example, how long this biological material would be expected to persist on the victim's body; whether it would still be there after she showered; or whether its presence on the fabric samples might be affected if her underpants were washed.  Without this information, the judge could not understand the probative value of the DNA evidence or assess whether its probative value outweighed its prejudicial effect.  See, e.g., Commonwealth v. Lally, 473 Mass. 693, 704-705 (2016) (nonexclusive Y-chromosome short tandem repeat method testing results admissible where DNA analyst provided needed

6

statistical context).[3]  We cannot conclude that, on the record available to her, the judge made a clear error of judgment in excluding this evidence.

2.  The prosecutor's closing argument.  In analyzing a claim of an improper closing argument, we review for prejudicial error those statements as to which the defendant objected, Commonwealth v. Rosario, 430 Mass. 505, 515 (1999), and, as to the others, we review to determine whether any error created a substantial risk of a miscarriage of justice.  Commonwealth v. Alphas, 430 Mass. 8, 20 (1999).  "[T]he prosecutor's remarks must be viewed in light of the 'entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial.'"  Commonwealth v. Rodriguez, 437 Mass. 554, 565 (2002), quoting Commonwealth v. Lamrini, 392 Mass. 427, 432 (1984).

a.  Burden-shifting.  The defendant challenges four sections containing multiple statements by the prosecutor in closing as impermissibly shifting the burden of proof to the defendant.  These statements responded to defense counsel's closing argument, which focused -- as did much of the trial

---

[3] In a rape case, "[e]vidence of specific instances of a victim's sexual conduct . . . shall not be admissible," subject to very limited exceptions, and such evidence is admissible "only after an in camera hearing on a written motion for admission of same and an offer of proof."  G. L. c. 233, § 21B. Here, as described above, the defendant made no offer of proof. Thus, the proffer of DNA evidence failed to meet the requirements for admission under the rape shield statute.

7

strategy -- on challenging the victim's credibility. The defendant objected to the first, seeking a curative instruction, which was declined by the trial judge, and objected to the third and fourth.

We discern no error in the judge's rulings. "A prosecutor may fairly respond to an attack on the credibility of the Commonwealth's witnesses." Commonwealth v. Monzon, 51 Mass. App. Ct. 245, 253 (2001). In so doing, however, "the prosecutor may not shift the burden of proof or argue that the defendant has any affirmative duty to prove his innocence." Commonwealth v. Fernandes, 478 Mass. 725, 741 (2018).

The first of the objected-to sections included the statement that it was "the defendant who is on trial here, not [the victim]." This responded to the defense closing, of which counsel devoted a substantial portion to questioning the victim's credibility. There was no burden shifting where the prosecutor reoriented the jury to the task at hand and responded to attacks on the victim's credibility. See Commonwealth v. Howell, 49 Mass. App. Ct. 42, 51 (2000) (permissible, though "unnecessary," to note that witness was "not on trial here"). The second, third, and fourth sections similarly responded to the defense strategy; each framed the jurors' task as assessing whether the victim would contrive her testimony and, if she had, what her motive was, and whether she would have acted or

8

testified as she had, were she fabricating.  A prosecutor may "respond to the defense argument and also . . . comment on the . . . weakness of the defense, as long as argument is directed at the defendant's defense and not at the defendant's failure to testify" (quotations and citation omitted).  Commonwealth v. Witkowski, 487 Mass. 675, 686 (2021).  "Rhetorical questions commenting on the evidence are not improper."  Fernandes, 478 Mass. at 742.  See Commonwealth v. Flint, 81 Mass. App. Ct. 794, 807 (2012).  Given the defense focus on the victim's credibility and the plausibility of her testimony, it was not error to permit the prosecutor to make these statements in closing.

Furthermore, "[w]e consider statements made during closing argument in the context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury" (quotation and citation omitted).  Lester, 486 Mass. at 247.  The jury were properly instructed that they were to determine "how much of a witness's testimony to believe and how much weight to give it."  Both before and after closing arguments, the judge instructed the jury that "the burden of proof is, and remains always, on the Commonwealth," that "it is not up to the defendant to prove that he is innocent," and that "the defendant does not have to prove anything to you here."  "Where the judge properly instructed the jury, we must presume that the jury

9

understood th[ose] instruction[s]" (quotation and citation omitted).  Id. at 248.

b.  Vouching.  "Vouching consists in the prosecutor 'explicitly or implicitly . . . indicat[ing] that he or she has knowledge independent of the evidence before the jury verifying a witness's credibility,'" and is impermissible.  Commonwealth v. Grier, 490 Mass. 455, 470 (2022), quoting Commonwealth v. Ciampa, 406 Mass. 257, 265 (1989).

The defendant's vouching claims relate to multiple passages in the closing.  In each, the prosecutor commented on aspects of the victim's testimony.  Each responded to attacks on her credibility.  The challenged statements can broadly be categorized as (1) the prosecutor's questioning the victim's motive to, or likelihood of, fabricating her experiences with the defendant and, therefore, her testimony, and (2) attempts to rebut attacks based on inconsistencies in the victim's testimony.

The first category of argument properly responded to the defense claim, made both in opening and closing, that "the only thing [the defendant] did wrong was get between an angry mama bear and her cub."  It was a centerpiece of the defense that the victim fabricated the assaults to appease or assuage her mother.  Responding to this claim was well within the bounds of proper closing argument, and we see no error in the judge's conclusion

10

that the prosecutor did not vouch for the victim in so doing. See, e.g., Grier, 490 Mass. at 470-471 (not improper for prosecutor to note that witness was "not on trial" where defense closing sought to discredit witness); Commonwealth v. Rosario, 460 Mass. 181, 190-191 (2011) (prosecutor's response to defense counsel's focus on testimonial inconsistencies, which focused on witness testimony, was not vouching); Commonwealth v. Rivera, 52 Mass. App. Ct. 321, 325 (2001), quoting Commonwealth v. Freeman, 430 Mass. 111, 119 (1999) (where "the complainant's credibility was at issue, the prosecutor was entitled to 'argue from the evidence why a witness should be believed'").

Another organizing principle of the defense closing was that truthful histories remain consistent over time, while untruthful ones do not. Counsel built the closing around contrasting versions of events that were "internally consistent" with those that were not, and asking the jury to consider whether versions of events were "externally consistent." Counsel employed this framework to discredit the victim's credibility. The second category of challenged statements responded to this narrative. The prosecutor was permitted to respond by offering the jury an alternate framework for considering inconsistencies in the victim's testimony. "Where credibility is at issue, it is certainly proper for counsel to argue from the evidence why a witness should be believed."

11

<u>Commonwealth</u> v. <u>Raposa</u>, 440 Mass. 684, 694-695 (2004), quoting <u>Commonwealth</u> v. <u>Thomas</u>, 401 Mass. 109, 116 (1987).

None of the challenged passages reveals the prosecutor "'explicitly or implicitly . . . indicat[ing] that he or she has knowledge <u>independent of the evidence</u> before the jury verifying a witness's credibility'" (citation omitted). <u>Grier</u>, 490 Mass. at 470. There was no vouching, and no error.

<u>Judgments affirmed</u>.

By the Court (Hand,
 Hershfang & Brennan, JJ.[4]),

Assistant Clerk

Entered: April 9, 2024.

---

[4] The panelists are listed in order of seniority.